UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Duy Ngo,** | Civil No. 03-3376 (RHK-JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Charles Storlie,** **City of Minneapolis, et al.,** | |
| Defendants. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above matter came before the undersigned on February 14, 2006 for plaintiff Duy Ngo's motion for sanctions based on the spoliation of evidence (Doc. No. 69). Robert Bennett, Esq., Eric W. Hageman, Esq., and Steven E. Rau, Esq. appeared on behalf of Mr. Ngo. Joesph E. Flynn, Esq., appeared on behalf of defendant Charles Storlie. Kevin G. Ross, Esq., and Monte A. Mills, Esq., appeared on behalf of defendant City of Minneapolis. The motion is assigned to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I. BACKGROUND

### A. Factual Summary

Mr. Ngo (Ngo), formerly an officer in the Minneapolis Police Department (MPD), brings action under 42 U.S.C. § 1983 against Charles Storlie, another officer in the MPD, and the City of Minneapolis (the City). Ngo moves for sanctions based on the spoliation of evidence, raising several arguments that agents of the City had altered or failed to preserve relevant evidence. In connection with this motion, the

parties submitted several hundred pages of documents and other evidence, and at the February 14 motion hearing, the parties received a full opportunity for oral argument.

This action arises out of an incident on February 25, 2003. In connection with his duties, Ngo was conducting a surveillance operation in south Minneapolis. He was in plain clothes and occupying an unmarked vehicle. At approximately 1:15 a.m., Ngo disclosed the operation to an MPD dispatcher. The dispatcher sent a text message to MPD squads notifying other officers about the operation.

Shortly after 2:00 a.m., a man approached Ngo's vehicle and pointed a gun at Ngo. Ngo attempted to wrestle the gun away from the assailant. The assailant fired served shots, one of which hit Ngo's body armor, and fled on foot. Ngo called dispatch and said he had been shot. A dispatcher transmitted an emergency signal, stated there was an officer down, and called police to the area. On the same channel, Ngo provided a description of the suspect, a black man wearing a black jacket and white tennis shoes. Ngo also advised he was in plain clothes.

The first officers to arrive were Mr. Storlie (Storlie) and his partner, Officer Jamie Conway (Conway). After seeing a man on the ground in the area of the shooting, Conway drove their squad up to the man. Storlie got out of the squad and fired on the man with a semi-automatic machine gun. At this point, either Storlie or Conway recognized that the man as a fellow police officer.

The parties dispute the circumstances leading to the incident. Ngo disputes whether Storlie received any of the broadcasted messages or understood the content of the messages. Ngo also alleges that Storlie either had an unauthorized weapon or that the weapon was not properly used.

In addition, the parties dispute several details about the shooting itself. Some evidence from the City suggests that, before firing his weapon, Storlie shouted an instruction at Ngo. The City adds that,

because Ngo was in plain clothes, Storlie could not necessarily identify Ngo as a fellow officer. Ngo counters that several identifying features were visible, including a badge, a police-issued radio, and body armor displaying the word "police" in reflective letters. The City further contends that Ngo was armed and moved in a manner that appeared threatening. Ngo states that he was unarmed and made no threatening movements. The parties do not dispute, however, the underlying fact that Storlie shot Ngo.

### B. Arguments on Spoliation

Although Ngo raises several issues in his motion, they may be categorized into two principal arguments. The first is that members of the MPD made false or misleading statements about the incident. The second is that the MPD did not make reasonable efforts to investigate the incident and preserve relevant evidence from the shooting.

Ngo describes four separate occasions where members of the MPD made false or misleading statements about the incident.

1. On the day of the incident, MPD Deputy Chief Lucy Gerold spoke with Minneapolis Mayor R.T. Rybak about the incident. According to Mr. Rybak, he received a "clear impression" that Ngo had shot himself.

2. The day after the incident, MPD Chief Robert Olson (Olson) held a meeting with Ms. Gerold (Gerold); Captain Stacy Altonen, supervisor of the MPD Homicide Unit; and Lieutenant Robert Skomra, head of the MPD Homicide Unit. Olson allegedly stated that Ngo had shot himself, and Altonen allegedly stated that Ngo's surveillance operation was unauthorized. Ngo claims Olson and Gerold improperly directed the Homicide Unit to assume, in its investigation, that Ngo shot himself.

3

3. On the day of the incident, Sergeant Michael Young submitted a written report that he did not arrive on the scene until after Storlie shot Ngo. But in a statement to the MPD Internal Affairs Unit in July 2004, Mr. Young claimed that he heard either Storlie or Conway shout commands at Ngo prior to the shooting.

4. Danielle Billops, who lived near the site of the incident, stated in a March 2004 interview that she did not hear any shouted commands prior to the shooting. In an April 2004 report and a May 2005 deposition, Sergeant Bruce Folkens indicated that, according to Ms. Billops, she had heard shouted commands prior to the shooting.

Ngo also claims that the MPD did not make reasonable efforts to investigate the incident and preserve evidence. Ngo asserts that the MPD should have assigned the investigation to the Hennepin County Sherriff's Office, rather than relying on the questionable competence of its own Identification Unit. The matters not adequately investigated, according to Ngo, include the following.

1. The working condition of components of the squad, such as the radio and public address loudspeaker.

2. The location of the squad before it was moved from the site of the shooting.

3. The location or condition of the equipment used by Ngo, such as his badge or body armor.

4. The number of rounds fired and their trajectory, based on crime scene analysis and forensic examination of Ngo's wounds.

5. The chain of custody for the semi-automatic machine gun used by Storlie, from the time of the incident until it was inventoried by the MPD.

6. The names and duties of persons who entered the site of the shooting.

Based on his allegations of spoliation, Ngo seeks several evidentiary sanctions against the defendants at trial. These include several conclusive adverse inferences, or in the alternative, an order precluding the defendants from offering proof on matters where they failed to preserve evidence.

## II.   DISCUSSION

A court may, consistent with its inherent authority to manage the judicial process, impose sanctions for the spoliation of evidence. *Bass v. General Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998). The moving party has the burden to prove spoliation. *Stevenson v. Union Pacific R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004). When all reasonable inferences are taken in favor of the moving party, but those inferences do not establish spoliation as a matter of law, then a motion for sanctions may be denied without an evidentiary hearing. *See Busch v. Dyno Nobel, Inc.*, 40 Fed.Appx. 947, 963 (6th Cir. 2002); *cf. Rothman v. Emory Univ.*, 123 F.3d 446, 455 (7th Cir. 1995) (holding that the decision to hold an evidentiary hearing, on a motion for discovery sanctions, is committed to the discretion of the district court).

Authorities in the Eighth Circuit have not uniformly described the elements of spoliation, but they may be summarized as follows. The moving party must show that the adverse party destroyed potential evidence. *Stevenson*, 354 F.3d at 745; *Lexis-Nexis v. Beer*, 41 F.Supp.2d 950, 954 (D.Minn. 1999). The potential evidence must be discoverable, *Lexis-Nexis*, 41 F.Supp.2d at 954, and its loss must cause prejudice to the moving party, *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993). Where potential evidence is destroyed prior to the commencement of litigation, the moving party must also show that the destruction was intentional and in bad faith. *Stevenson*, 354 F.3d at 746; *E*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D.Minn. 2005).

**A.     Destruction**

To show destruction, the moving party ordinarily must prove that an opposing party altered or destroyed tangible evidence. *See, e.g., Stevenson*, 354 F.3d at 746; *Bass v. General Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1993). Ngo frequently argues that the MPD, in its investigation of the incident, failed to collect or preserve potential evidence. Thus he implies that failure to investigate, by itself, is equivalent to destruction of evidence. But in his memorandum for sanctions, Ngo has not cited any authorities that support this contention.[1] *See, e.g., Morris v. Union Pacific R.R.*, 373 F.3d 896, 899-900 (8th Cir. 2004) (destruction of cockpit recordings); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266 (8th Cir. 1993) (destruction of vehicle); *Donato v. Fitzgibbons*, 172 F.R.D. 75, 84 (S.D.N.Y. 1997) (destruction of vehicle headlights); *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 364 (D.Mass 1991) (destruction of vehicle). Because most of Ngo's arguments for spoliation are not supported by allegations that evidence was destroyed, sanctions are not available in these matters.

Only one issue, in his arguments for failure to investigate, requires specific discussion here. Ngo alleges that the MPD did not seize Storlie's semi-automatic machine gun until more than twelve hours after the incident, and therefore, Storlie had the opportunity to tamper with the gun. This issue may involve alteration of evidence.

---

[1] In support of his contention that failure to investigate is equivalent to destruction of evidence, Ngo relies in part on the decision of the U.S. Supreme Court in *Youngblood v. Arizona*. 488 U.S. 51 (1988). The Court held that "unless a criminal defendant can show bad faith on the part of police, failure to preserve evidence does not constitute a denial of due process of law." *Id.* at 58. Even if this proposition were applicable to a motion for sanctions based on spoliation, it fails to support Ngo's argument.

The record indicates that Sergeant Robert Berry arrived on the scene shortly after the incident and seized the gun at that time. Mr. Berry did not immediately inventory the gun, but first accompanied Storlie to the hospital for drug testing. But it is otherwise evident, from the relevant inventory form, that the gun was secured a few hours after the incident. Even with all reasonable inferences in his favor, these facts do not support Ngo's allegations or prove that the gun was altered.

Ngo also argues that members of the MPD made false or misleading statements about the incident. A false or misleading statement may impede the search for truth, but it does not by itself alter or destroy other potential evidence. Assuming that witnesses have made such statements, the inconsistencies may provide grounds for impeachment, but they do not prove spoliation.

Spoliation may potentially include circumstances where an opposing party conspires to conceal evidence. *See Penthouse Int'l, Inc. v. Playboy Enters., Inc.*, 663 F.2d 371, 388 (2d Cir. 1981). This theory of spoliation may apply to the conference between Olson, Gerold, Altonen, and Skomra, as Ngo alleges that they later directed investigators to assume that Ngo shot himself. But in order for this theory to be persuasive, Ngo must prove that the MPD concealed evidence that Ngo was shot by others, and that the MPD instead presented evidence that Ngo shot himself.

Even when all reasonable inferences are taken from the record, there is no meaningful proof of the existence of such a conspiracy. The record supplies overwhelming evidence that Ngo was shot by others. Aside from some hearsay statements in the day following the incident, there is no indication that the MPD presented evidence to the contrary. Thus the conference between Olson and his subordinates, standing alone, does not support sanctions for spoliation.

The prior analysis disposes of most of Ngo's arguments for sanctions. All of the false or misleading statements, and most of the investigative failures, do not involve the destruction of evidence. When all reasonable inferences are taken from the record, Ngo only has a few surviving claims. He may argue that alteration of evidence occurred when the MPD relocated the squad and removed his equipment. The remaining analysis proceeds accordingly.

### B.     Intent and Bad Faith

This Court will assume, for the sake of argument, that the remaining potential evidence is discoverable and that its loss caused prejudice to Ngo. Thus the outstanding inquiry is whether the destruction of evidence was intentional and in bad faith. *Stevenson v. Union Pacific R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004); *E\*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D.Minn. 2005). Bad faith may be inferred when a party knows the value of potential evidence but proceeds to destroy some or all of that evidence. *See E\*Trade Securities LLC*, 230 F.R.D. at 590; *Lexis-Nexis v. Beer*, 41 F.Supp.2d 950, 954-55 (D.Minn. 1999).

When the MPD first relocated the squad and removed Ngo's equipment, it did so in the context of a rapidly evolving emergency, where Ngo required immediate medical assistance. Although there is some confusion about the subsequent use and custody of these items, there is no reasonable indication that members of the MPD maliciously intended to alter them or impede an investigation. To the extent that these actions caused the loss of evidence, there is no bad faith that supports imposition of sanctions.

## III.     CONCLUSION

For the reasons discussed above, this Court concludes that Ngo cannot prevail on his motion for sanctions based on spoliation of evidence. This Court recommends, therefore, that the motion be denied.

## IV.     RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Ngo's motion for sanctions based on the spoliation of evidence (Doc. No. 69) be **DENIED.**

Dated this 28th day of February, 2006.                           s/ Jeanne J. Graham

JEANNE J. GRAHAM<br>
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by <u>March 20, 2006</u>. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.